FILED
United States Court of Appeals
Tenth Circuit

October 24, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DANIEL L. ROSALES,

     Petitioner - Appellant,

v.

KEVIN MILYARD; JOHN SUTHERS,
The Attorney General of the State of
Colorado,

     Respondent - Appellees.

No. 13-1183
(D.C. No. 1:10-CV-03101-CMA)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **HOLMES,** and **MATHESON**, Circuit Judges.

Daniel L. Rosales, a Colorado state prisoner proceeding pro se,[1] seeks a certificate

of appealability ("COA") to appeal the district court's dismissal of his 28 U.S.C. § 2254

habeas petition. *See* 28 U.S.C. § 2253(c)(1) (requiring a COA to appeal the denial of a

habeas application). Mr. Rosales also requests leave to proceed *in forma pauperis*

---

    [*]This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive
value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [1] Because Mr. Rosales is proceeding pro se, we construe his filings liberally. *See
Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[T]his rule of liberal construction stops,
however, at the point at which we begin to serve as his advocate." *United States v.
Pinson*, 584 F.3d 972, 975 (10th Cir. 2009).

("*ifp*").  Exercising jurisdiction under 28 U.S.C. § 1291, we deny both requests and dismiss this matter.

## I. **BACKGROUND**

### A. *State Court Proceedings*

In November 2002, a Colorado state court jury found Mr. Rosales guilty of two counts of first degree murder after deliberation, two counts of first degree felony murder, one count of first degree burglary, one count of second degree assault, and one count of violating a restraining order.  *See People v. Rosales*, 134 P.3d 429, 431 (Colo. App. Aug. 11, 2005).  The evidence showed that on the night of the murders, Mr. Rosales beat his girlfriend, then took a shotgun and drove to his estranged wife's apartment.  Mr. Rosales broke into the apartment by firing two shots to disable locks on the apartment door.  He then reloaded his gun on his way to the bedroom, where he discovered his estranged wife with the man she had been dating.  Mr. Rosales shot and killed them both.  *Id.*

Mr. Rosales was sentenced to two concurrent life sentences for murder, a concurrent prison term of thirty-two years for burglary, a consecutive term of sixteen years for assault, and a concurrent term of eighteen months for violating the restraining order.  The state trial court additionally ordered restitution in February 2003, a month after Mr. Rosales filed his notice of direct appeal.  *Id.*

On direct appeal, the Colorado Court of Appeals ("CCA") affirmed Mr. Rosales's conviction and remanded the case to the trial court with instructions to amend the mittimus to include an order of restitution.  *Id.* at 436.  The Colorado Supreme Court

-2-

denied Mr. Rosales's petition for certiorari. *See Rosales v. People*, No. 05SC684, 2006 WL 1688339 (Colo. May 22, 2006).

Mr. Rosales next filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure. The state trial court denied that motion. The CCA affirmed denial, *see People v. Rosales*, No. 07CA1881 (Colo. App. Mar. 26, 2009), and the Colorado Supreme Court denied certiorari. *See Rosales v. People*, No. 2009SC409 (Colo. Sept. 7, 2010) (en banc).

All of the claims for which Mr. Rosales seeks COA were presented to and adjudicated by the Colorado courts and therefore were exhausted for purposes of habeas review.

## B. *Federal Habeas Petition*

Mr. Rosales asserted nine claims at the district court, the first six of which he continues to assert in his application for COA:

    (1) Trial court error in allowing a faulty jury instruction on self-induced intoxication;

    (2) Prosecutorial misconduct in closing argument;

    (3) Lack of trial court jurisdiction to impose restitution;

    (4) Trial court error in imposing restitution after Mr. Rosales sold his house;

    (5) Double Jeopardy Clause and Due Process violations in imposing restitution;

    (6) Ineffective assistance of trial counsel;

    (7) Trial court error in not holding an evidentiary hearing during the postconviction proceeding;

(8) The postconviction court's violation of state civil and criminal rules in denying

    Mr. Rosales's request to amend his Rule 35(c) motion as well as his request for an

    evidentiary hearing; and

(9) Ineffective assistance of postconviction counsel.

The district court produced a thorough order examining each of Mr. Rosales's claims. *See Rosales v. Milyard*, No. 10-cv-03101-CMA, 2013 WL 1302657, at *1 (D. Colo. Mar. 29, 2013) (unpublished) (hereinafter "Dist. Ct. Order."). The district court denied Claims One, Two, Six, and Seven for lack of merit. It denied Claims Three, Four, and Five for lack of jurisdiction, holding that restitution payments are not the sort of restraint on liberty contemplated by the "in custody" requirement of § 2254(a). Finally, the district court held that Claims Eight and Nine failed to state cognizable federal habeas claims.

The district court further denied COA, holding that Mr. Rosales had not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c). It also certified that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal of its order would not be taken in good faith and *ifp* status should therefore be denied on appeal.

## II. **DISCUSSION**

Mr. Rosales may not appeal the district court's denial of his § 2254 petition without a COA. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006). To obtain a COA, Mr. Rosales must

make "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). To make this showing, Mr. Rosales must demonstrate "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or

that jurists could conclude that the issues presented are adequate to deserve

encouragement to proceed further." *Dulworth v. Jones*, 496 F.3d 1133, 1136-37 (10th

Cir. 2007) (quotations omitted).

As the district court noted, federal habeas review of state court decisions is

governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

AEDPA provides that if a state court adjudicated the merits of a claim, a federal court

cannot grant habeas relief unless the state court decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding," *id.* § 2254(d)(2). When deciding whether to grant a COA, we are

required to "look to the District Court's application of AEDPA to petitioner's

constitutional claims and ask whether that resolution was debatable among jurists of

reason." *Miller-El*, 537 U.S. at 366.

In his application for COA, Mr. Rosales reasserts the first six claims that he

presented in his habeas petition at the district court. We address each of these claims in

turn.

A. *Claim One*

Mr. Rosales asserts in Claim One that the state trial court used a faulty jury instruction on self-induced intoxication. According to Mr. Rosales, he was heavily intoxicated the night of the murders. *See* Aplt. Br. at iii. He contends that although self-induced intoxication is not an affirmative defense in Colorado, it can reduce the level of culpability associated with an act if the factfinder determines that the state has failed to satisfy its burden of proof as to the mens rea of specific intent.

Mr. Rosales contends that the jury instruction[2] in his case was erroneous because: (1) it improperly focused on whether, as a result of his intoxication, he lacked the capacity to form specific intent, rather than whether he had in fact formed specific intent; (2) it failed to instruct the jury that it *must* consider evidence of self-induced intoxication, stating only that it "may" consider such evidence; (3) it misled the jury by suggesting that

---

[2] The jury was instructed that they

> may consider evidence of self-induced intoxication in determining whether or not intoxication negates the existence of the particular state of mind of with intent, which is also known as specific intent or after deliberation, and with intent. The prosecution has the burden of proving all of the elements of the crimes charged. If you find the defendant was intoxicated to such a degree that he did not form the specific intent which is a required element of the crimes of first-degree murder, amended counts 1, 2, 3, and 4; first-degree burglary, Count 5; and second-degree assault, Count 7, you should find defendant not guilty of those charges. Self-induced intoxication is not applicable to the state of mind of knowingly, which is an element of the general intent crimes of the lesser included offense of murder in the second degree, lesser included offense of first-degree criminal trespass, kidnapping, Count 6, violation of restraining order, Count 8; and violent crime enhancers, which are counts 9 and 10.

Dist. Ct. Order at *7 (quoting *Rosales*, No. 01CR3022, Trial Tr., Nov. 20, 2002, at 63-64).

the jury may not take evidence of intoxication into account unless the prosecution proves beyond a reasonable doubt that his intoxication was so severe that he could not form specific intent; and (4) the CCA on direct appeal admitted the instruction was an incorrect statement of law but failed to correct the harm it caused.

The CCA considered Mr. Rosales's jury instruction claim both on direct appeal and on post-conviction review. It denied Mr. Rosales's claim in both instances. *See Rosales*, 134 P.3d at 433-34; *Rosales*, No. 07CA1881 at 6-8.

"Claims of erroneous jury instructions can justify setting aside a state conviction on habeas only if 'the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or is otherwise constitutionally objectionable as, for example, by transgressing the constitutionally rooted presumption of innocence.'" *Dockins v. Hines*, 374 F.3d 935, 938-39 (10th Cir. 2004) (quoting *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979)).

The district court concluded that Mr. Rosales failed to make this required showing. Specifically, it held that (1) the jury instruction properly directed jurors to determine if Mr. Rosales had in fact formed specific intent, in keeping with Colorado law, *see People v. Versteeg*, 165 P.3d 760, 766-68 (Colo. App. 2006);[3] (2) Mr. Rosales's argument that

---

[3] Mr. Rosales argues the district court failed to mention that *People v. Harlan*, 8 P.3d 448 (Colo. 2000) (en banc), *overruled on other grounds by People v. Miller*, 113 P.3d 743 (Colo. 2005) (en banc), requires juries to be instructed that they "must" consider evidence of self-induced intoxication. But *Harlan* states no such requirement. It merely requires that if a jury receives an instruction on intoxication, it should be instructed to

Continued . . .

the instruction should have said the jurors "must" rather than "may" consider evidence of self-induced intoxication was "without basis," Dist. Ct. Order at *7, because Mr. Rosales did not show that the jury disregarded the instruction to consider all evidence; and (3) nothing in the jury instruction reduced the prosecution's burden of proof. Finally, after reviewing the CCA's opinion on direct appeal "with close scrutiny," the district court could find no admission in the CCA's opinion that the instruction was an incorrect statement of law. *Id.* at *8. We agree with this analysis.

We conclude that jurists of reason could not disagree with the district court's denial of Claim One and deny COA.

## B. *Claim Two*

Mr. Rosales asserts in Claim Two that the prosecution committed misconduct in closing argument by urging the jury to nullify the law regarding self-induced intoxication. In his request for COA, Mr. Rosales does not challenge the district court's reasoning in denying this claim. Rather, he repeats his contentions from his habeas petition. Mr. Rosales argues that the prosecution improperly suggested to the jury that acquitting Mr. Rosales of first degree murder would reward his intoxication. He also claims prejudice from the CCA's plain error review of this issue. The CCA applied plain error review on direct appeal because trial counsel did not raise contemporaneous

---

consider whether the defendant had in fact formed specific intent, and not whether the defendant lacked capacity to form specific intent. *Id.* at 471.

objections to the improper statements.  *See Rosales*, 134 P.3d at 434-36.

A prosecutor's improper statement amounts to prosecutorial misconduct only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  This determination must be based on the totality of the circumstances.  *See Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998).  "Inappropriate prosecutorial statements, standing alone, would not justify a reviewing court" granting relief on a claim of prosecutorial misconduct.  *United States v. Young*, 470 U.S. 1, 11 (1985).

The district court concluded that Mr. Rosales has not shown that the alleged prosecutorial misconduct was egregiously unfair, or that the prosecutor's comments amounted to "jury nullification," defined as "a violation of a juror's oath to apply the law."  Dist. Ct. Order at *10 (quoting *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)).  We agree with the district court that the CCA's denial of the claim satisfies AEDPA review.  Reasonable jurists would not find this conclusion debatable.  We therefore deny COA.

## C. *Claims Three, Four, and Five*

In Claims Three, Four, and Five, Mr. Rosales challenges the trial court's imposition of restitution after he had filed his notice of appeal.  Mr. Rosales argues that he has been ordered to pay the same restitution twice, in violation of his due process rights and constitutional protection against double jeopardy.  The district court dismissed

these claims for lack of jurisdiction.  In his request for COA, Mr. Rosales does not explain why he challenges the district court's reasoning.  He merely maintains that he complied with exhaustion and notice requirements and that the district court's refusal to address these claims on the merits itself violates his due process rights.

The district court properly held that a restitution payment is not the sort of significant restraint on liberty contemplated by 28 U.S.C. § 2254(a), which grants federal court jurisdiction over an application for habeas "of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody* in violation of the Constitution or laws or treaties of the United States" (emphasis added).  *See Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 (10th Cir. 2008).  Because the "in custody" language of § 2254(a) is jurisdictional, *id.*, the district court correctly concluded that it lacked subject matter jurisdiction over Claims Three, Four, and Five.  We deny COA on these claims.

D. *Claim Six*

In Claim Six, Mr. Rosales alleges ineffective assistance of counsel resulting from trial counsel's failure to (1) investigate Mr. Rosales's intoxication the night of the murders; (2) interview jail intake personnel regarding Mr. Rosales's intoxication level; (3) present a provoked heat of passion defense; (4) obtain independent blood analysis; (5) advise Mr. Rosales before he waived his right to testify that only one witness would testify for the defense; (6) object to the intoxication instruction; and (7) object to the

-10-

prosecution's statements during closing argument.[4]

To establish a Sixth Amendment violation for ineffective assistance of counsel, a petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance resulted in prejudice to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Petitioner must overcome a strong presumption that counsel's representation was reasonable with evidence that counsel made errors so serious as to violate the defendant's Sixth Amendment right to counsel. *See Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

As to prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. Rather than asking whether

---

[4] The district court determined that three additional subclaims asserting ineffective assistance of trial counsel in Mr. Rosales's original petition were procedurally barred. These subclaims contended that trial counsel failed to (1) interview Mr. Rosales's girlfriend regarding his assault of her; (2) object to the prosecution's comments during voir dire; and (3) object to inadmissible prior act evidence. Dist. Ct. Op. at *2. Mr. Rosales does not attempt to raise these claims in his request for COA, and we do not address them.

defense counsel's performance fell below the *Strickland* standard, we ask "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. The CCA, affirming denial of Mr. Rosales's post-conviction challenge, rejected all of his ineffective assistance claims. *See Rosales*, 07CA1881. So long as the CCA reasonably applied the *Strickland* standard to these claims, habeas relief is not available.

1. **Subclaims (i) and (ii): Investigation and Interviews**

Mr. Rosales alleges that trial counsel failed to investigate his intoxication level and interview jail intake personnel regarding his intoxication. Specifically, he asserts that trial counsel never investigated his history of alcohol abuse and should have called witnesses who could testify that he was staggering and slurring his words the night of the murders. He also contends that counsel should have obtained a copy of his bar tab from one of the bars where he was drinking the night of the murders to establish how much alcohol he had consumed. Similarly, he argues that counsel should have interviewed the intake case manager at the Jefferson County Jail, who had told him that his blood alcohol content ("BAC") was very high when he was admitted to the jail.

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The district court concluded that obtaining copies of Mr. Rosales's bar tabs was not a reasonably necessary investigation because a bar itemizes how much an individual paid for beverages and/or food but not how much alcohol he actually consumed. It also held that Mr. Rosales has not presented evidence that trial counsel was

-12-

ineffective in failing to investigate his prior drug and alcohol abuse, and that Mr. Rosales has not established that trial counsel did not ask the jail intake manager or those who saw him drinking to testify. The district court concluded that Mr. Rosales had not provided sufficient support to overcome the strong presumption of counsel's reasonable representation.

The district court further held that even if Mr. Rosales could show that trial counsel was deficient in failing to investigate these issues, Mr. Rosales was not prejudiced. As the district court noted, the evidence against Mr. Rosales at trial was overwhelming. Witnesses testified that Mr. Rosales drank regularly, often beat his wife and made disparaging remarks about her and—after their estrangement—about her boyfriend. They also testified that Mr. Rosales stated he wanted to kill his estranged wife and was jealous of her boyfriend. Forensic evidence indicated Mr. Rosales shot at the locks on his wife's apartment door, then was able to quickly reload his shotgun and proceed to the bedroom to shoot the victims before they could escape. Given this overwhelming evidence, the district court held that Mr. Rosales had not established that trial counsel's failures prejudiced him.

Mr. Rosales now contends that the district court was wrong to conclude that the bar tab investigation was unnecessary. He argues that evidence of his bar tab, when combined with interviews of witnesses who could testify to how much he was drinking, would lead to an accurate assessment of his BAC at the time the crimes took place. He also argues that counsel failed to contact potential witnesses to find out whether they

could testify.

Because Mr. Rosales has not shown he was prejudiced by trial counsel's actions under the second part of the *Strickland* standard, 466 U.S. at 692, his arguments do not suffice to demonstrate that reasonable jurists "could disagree with the district court's resolution of [Mr. Rosales's] constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further." *Dulworth*, 496 F.3d at 1137 (quotations omitted). The district court's analysis confirms and it is not debatable that the CCA reasonably applied the *Strickland* standard. We therefore deny COA on this issue.

## 2. **Subclaim (iii): Failure to Present a Provoked Heat of Passion Defense**

Mr. Rosales argues that trial counsel was ineffective because he did not pursue a "provoked heat of passion" defense. Mr. Rosales argues that he was "in an extreme state of emotional outrage" aggravated by his intoxication just before he drove to his estranged wife's apartment. Aplt. Br. at 41. He contends that he did not know that his estranged wife's boyfriend would be present when he went to the apartment, and that when he found him in bed with his estranged wife, he was propelled into a state of "extreme emotional upheaval." *Id.* at 43. Mr. Rosales asserts that trial counsel should have sought a jury instruction regarding the heat of passion defense under Colorado law, which mitigates second degree murder when "performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim." *See* Colo. Rev. Stat. § 18-3-103(3)(b).

-14-

The district court reviewed the CCA's holding regarding the heat of passion defense. The CCA stated that the facts of Mr. Rosales's case do not support a theory that Mr. Rosales acted in a sudden heat of passion after a highly provoking act of the victim. *Rosales*, No. 07CA1881 at 16-17. As the CCA noted, Mr. Rosales beat his girlfriend, then obtained a shotgun, drove to the home of his estranged wife, shot the locks off her door, and reloaded his weapon before even entering her bedroom and finding her with another man. Mr. Rosales also knew for quite some time that his wife had been seeing another man, and he had told others on multiple occasions in the months preceding the murders that he wanted to kill his wife. The district court agreed with the CCA that "[t]he evidence was overwhelming that [Mr. Rosales] intended to murder his wife before he even entered the bedroom in her apartment." Dist. Ct. Order at *17.

Mr. Rosales argues in his request for COA that under Colorado law, a defendant is entitled to an affirmative defense instruction whenever there is a "scintilla of evidence" to support that defense. *See, e.g.*, *People v. Jones*, 677 P.2d 383, 385 (Colo. App. 1983), *rev'd on other grounds*, 711 P.2d 1270 (Colo. 1986) (en banc). He contends that trial counsel should have sought a heat of passion instruction based on evidence that Mr. Rosales and his wife had engaged in marital sexual relations during their separation and were trying to salvage their marriage. Mr. Rosales argues he naturally would have been enraged to find his wife in bed with another man. He further asserts that his aggressive behavior in breaking into his wife's apartment "indicate[s] at least a modicum of rage on his part." Aplt. Br. at 43.

We agree with the district court that the CCA's decision regarding counsel's failure to pursue the heat of passion defense was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). Jurists of reason could not debate the district court's conclusion that trial counsel cannot be found ineffective for having failed to present a defense that was not supported by the facts.

Even if Mr. Rosales could have been entitled to a jury *instruction* on the heat of passion defense based on a scintilla of evidence, he has not demonstrated that trial counsel's failure to *raise* the defense in the first place amounts to ineffective assistance. As the district court and the CCA noted, there was ample evidence of Mr. Rosales's premeditation, including his statements on several occasions in the months preceding the murders that he wanted to kill his wife. Mr. Rosales has not demonstrated that trial counsel's failure to raise the heat of passion defense was unreasonable or that it prejudiced him at trial. The district court's AEDPA review of this claim would not be debatable among jurists of reason. We therefore deny COA on this issue.

3. **Subclaim (iv): Independent Blood Analysis**

Mr. Rosales contends that trial counsel failed to present a blood alcohol report to the jury and to call an expert to provide scientific evidence regarding his level of intoxication.

The district court noted that Mr. Rosales failed to explain what the expert testimony would have shown about his ability or inability to form the required specific

intent. It also noted that during a pretrial hearing, the prosecution produced an expert who provided testimony regarding the effects of alcohol on Mr. Rosales's behavior before and after the murders. The expert testified that Mr. Rosales exhibited signs of a high tolerance for alcohol and that he demonstrated rational thought processes in statements he made soon after the murders. The district court concluded that, because the prosecution's addiction psychiatry expert could testify at trial to Mr. Rosales's high tolerance, defense counsel could not be found ineffective for not calling an expert to testify regarding Mr. Rosales's intoxication level. It also noted that Mr. Rosales failed to demonstrate how the BAC report—which was taken twelve hours after the murders—would be relevant to his level of intoxication at the time of the murders.

Mr. Rosales now argues that the district court was incorrect to focus on trial counsel's failure to produce the existing BAC report. He contends instead that trial counsel could have obtained information to determine his BAC at the time of the shootings by using an expert witness to extrapolate his BAC from bar tab and eyewitness evidence. He also contends that counsel failed to obtain an expert equipped to rebut the prosecution's own expert evidence.

Apart from whether Mr. Rosales should be allowed to raise these arguments at this stage, he still has failed to show that the CCA unreasonably determined that trial counsel was not ineffective in failing to present this BAC evidence at trial. Even if Mr. Rosales could make that showing, he has produced no evidence that trial counsel's failure prejudiced him in light of the overwhelming evidence against him. We therefore deny

COA on this issue.

4. **Subclaim (v): Failure to Advise that Only One Witness Would Be Called for Defense**

Mr. Rosales asserts that trial counsel listed seventeen people on the defense witness list but only called one witness. He contends that he would not have waived his right to testify if he had known that only one witness would appear on his behalf. He argues that he would have testified about how much he had been drinking on the night of the murders, as well as his prior drug use and depression.

As the district court stated, the trial court thoroughly advised Mr. Rosales of his right to testify, and Mr. Rosales stated at trial that he was not pressured or coerced in deciding not to testify. Even if trial counsel acted unreasonably by calling only one witness, Mr. Rosales has provided no evidence that he was prejudiced by trial counsel's decision.

We agree with the district court's analysis for substantially the same reasons and conclude that reasonable jurists would not debate the district court's denial of this claim. We deny COA on this issue.

5. **Subclaims (vi) and (vii): Intoxication Instruction and Prosecution's Comments**

Finally, Mr. Rosales asserts that counsel failed to object to an erroneous intoxication instruction and nullifying statements made by the prosecution alleged in Claims One and Two. [Aplt. Br. at 24.] Based on our and the district court's earlier consideration of those two claims, Mr. Rosales was not prejudiced by trial counsel's

-18-

failure to object. Dist. Ct. Order at *18. We hold that reasonable jurists would not debate the district court's conclusion that the CCA's denial of these claims was reasonable. A COA is therefore denied.

## III. **CONCLUSION**

We deny Mr. Rosales's request for a COA and dismiss this matter. We also deny his motion to proceed *ifp*.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

-19-